May I please report? Counsel, my name is Greg Silvey, and I represent Mr. Casildo. So, I know nobody wants to see a career offender case. You weren't back in chamber saying, oh boy, we get to do a categorical analysis. But I want to put the positive spin on this. I'm excited to bring you this case. So, in trying to, there's a lot going on here. We had a pro se, pro se petitioner in a 2255. But if we just drill down to what really matters in this, we get to whether the actus reus of the Nevada controlled substance statute is divisible or not. And just for quick reference, I have it in my brief at page 22. The government has it in their brief at page 14. And so I'll just kind of summarize it. But what we have is in A, we have import, transport, sell, exchange, barter, supply, prescribe, dispense, give away, or administer a controlled substance. In B, we have manufacture or compound a counterfeit substance. And in C, we have offer or attempt to do any act. So, basically, in A, we have doing things with a substance. In B, we have making things. And in C, we have trying to do things. So, when we're looking at these subsections and we're looking to see are they elements or are they just alternative means, we have like three groups. So, in A, we have a big group and they're all doing stuff with things. And so, basically, it is our argument that A is indivisible and these are just means and not elements. So, when we go to the case law, we have nothing controlling. The government and the district court here, they used Riviera-Esquivel, which is just a non-binding panel decision, which says that it is divisible. You know, that's my elephant in the room. And I say for what I just said is the structure of the statute. So, there's a suggestion in looking at the statute that it's means and not elements. But then, more interesting is that case went to three old Nevada state cases and said this is binding precedent. But when you look at those old cases, it's not. Number one, they're pre-guidelines. Well, I read those cases. Whether binding or not, they say nothing about the question in front of us. Exactly. I mean, there's nothing there. Right. It just says, you know, drug dealer said, here's some heroin. That doesn't necessarily mean Riviera's wrong, but the cases they rely on are neither here nor there.  Okay. Tell me about Via Vicencio. Because that one may be more helpful to you. Exactly. That's much more helpful. So, it's a different statute, but it's still a Nevada controlled substance statute. And that says that the different ways of doing things are means and not elements, because in Nevada, generally speaking, the jury does not have to pick one of the means. And so, that's why we know that they're means and not elements. And that is what Turner 2 made its ruling on, that it is indivisible and, therefore, not a categorical match. So, yes, that is the case that I rely on, the one that the actual district court sitting in Nevada, dealing with Nevada, picked. So, and it's actually a published Ninth Circuit decision. So, shockingly enough, that's the one that I like, and I think that that's basically dispositive of the categorical analysis. So. Tell me what the harm is. The harm. Okay. So, this is interesting, or maybe not interesting, but it's at least the answer to that question. So, this district judge, for a long, long time, you know, been on the bench for 25 years, and went from meth being from 7% pure to everything's 100% pure. And so, as you can tell from the sentencing discussion with the prosecutor, the judge would first kind of average and then just use the mixture guideline over the pure guideline. And that's where he was discussing with the co-defendant. He did that. It made some difference. And in this case, he said, oh, I don't need to do that because it's career offender. So, there's enough in the record there to show that there was probably going to be, if it wasn't a career offender case, a variance based on that, or, you know, could just be using the mixture guideline, which would change things. And also, the co-defendant, who was, you know, the source of supply, and it's somewhere in the record, and I know because I footnoted something, I think, it said he had, I think the judge said that he had less than Mr. Casildo. No, he didn't. He had a pound when he was caught. And he got, you know, the 10-year sentence, and Casildo's getting the 20-year sentence. So, if the career offender wasn't floating around there that the judge thought that he needed to apply, you know, I believe that the sentence would have been lower. And then – How much lower? That's why this needs a remand. So, is any potential amount lower sufficient for us to remand it, or does it have to be significant? And, I mean, this is – you're just kind of throwing it out there. We don't know that the judge would have really – And was it the same judge who did the sentencing and handled the habeas? Yes. And he was the one who determined that there would be no prejudice? Unfortunately, yes. On the other hand, at sentencing, the district judge said – and I'm just quoting the judge – at sentencing, were it not for those two prior convictions, or if there had been only one prior drug conviction, we would be talking about a very, very different case, a very, very different sentence, probably something on the order of what Mr. Recana received, maybe even less. That's the district judge at sentencing. Exactly. I think he might have forgotten when he got to the 2255 what he had said at sentencing. Right. District judges never forget those things. I adopt that argument. And then the interesting thing is – and I'll also make a comment to the district judge – so the judge actually did very downward, even with the career offender, and as district judges always say, the best indicator of future behavior is past behavior. So the district judge did it once. Why wouldn't he do it again? I think it's certainly worth the remand for that. And then we have these other things floating around. So the inchoate charge thing is interesting, but yes, it was brought up in a reply brief. You don't get to bring up things in a reply brief. But this case has enough going on. I mean, I, of course, want it reversed outright, but at the very least I think it deserves a remand and counsel appointed to get through these thorny issues. So let's assume that the court erred on divisibility, that the career offender enhancement doesn't apply. So there's prejudice there. The guidelines have to be recalculated. My question goes to ineffective assistance of counsel. Given the failure to raise the guideline question, isn't that ineffective assistance? Is there any point in asking the district court to go back through that question? Can't we just remand this for resentencing? I believe so. I mean, that's what I'm asking for, because if you find that the career offender didn't apply, and I think I make this argument, and I mean, this is just, I mean, this law predated this case. I mean, Turner and Turner II and the binding Ninth Circuit case, this all predated the case. And the attorneys, you know, the attorney did nothing at the sentencing. So, yes, I mean, that obviously was ineffective, so I think it just goes back. It doesn't have to, but if for some reason this court were not to just reverse and remand, I believe it could just be remanded, so these thorny issues could be plucked, so to speak. You're running low on time, if you want to save any more time. I'm going to save time.  Thank you. Thank you, counsel. Ms. Crane. Good morning, Your Honors. May it please the court, Darcy Crane of the United States. This court should affirm the district court's denial of the defendant's 2255 motion in this case, because it is procedurally defaulted. There was no prejudice, and there was no excuse. So how can you say no prejudice, given the sentence I just read to you, quoting the district judge at sentencing, where he says, listen, if it had been only one, you'd have a very different sentence. How can you say there's no prejudice? I view that quote differently, Your Honor, because whether or not the career offender enhancement applied, what the district court was referring to there was the defendant's prior convictions, and the defendant's two prior convictions remain, whether or not they're predicate offenses for the career offender enhancement. So the district court's focus on the defendant's prior criminal history still remains a factor in his sentencing, and that is how the government looks at what that statement is. Okay. The district court in this case is the judge who considered the 2255 motion, was the trial judge, and was the sentencing judge in this case. And when we're considering whether or not there's prejudice, let's begin with whether or not there would be a different sentence applied. And in this case, the defendant's offense level would be a 34, whether he's a career offender or not. The 34, he had a 32 base offense level with the amount of drugs in this case, and he received a two-level enhancement. So even without the career offender, he would be at a 34. The difference between career offender and where the defendant's guideline range would be would be his criminal history category. So he would be a criminal history category 5 without the career offender enhancement, meaning that even if we were to look at that, his guideline range without the career offender enhancement would be 235 to 293 months. And the defendant in this case received a sentence of 235 months. Importantly, the district court, when considering this case, in full view of its prior comments made at sentence, indicated that there would not be prejudice based on a different sentence. The government does believe that the Nevada revised statute is divisible as to the actus reus, and the career offender enhancement was appropriately applied. Counsel, let me ask you about the guideline range. What was the actual guideline range spread for what Mr. Casilda Bean labeled a career offender? It was 262 to 327 months. And yet the judge sentenced him to 235? Yes. So why wouldn't it be reasonable for us to believe that if the starting point was 235, the judge may have gone lower? During the district court's comments at sentencing, it talked about a variety of things. It touched on all the 3553A factors. It talked about how they were applicable to this defendant, and it discussed whether or not, and made clear that it wasn't providing a trial tax, for lack of a better phrasing, to this defendant for proceeding. And so the district court considered all the appropriate information and chose to give a sentence of 235 months. And at sentencing, the district court noted, made a comment about how that this sentence would have been within the guideline range, I believe, if the defendant had not proceeded to trial. And so this change in the career offender to not career offender doesn't change those same characteristics of the defendant. It doesn't change his outstanding career, his criminal history. It doesn't change the fact that this was his third drug offense in 15 years. All of those remain the same. And the district court at that point thought the sentence of 235 months was appropriate. The government does, in its brief, cite to the Esquivel case, which is unpublished, that the actus reus is divisible for the Nevada revised statute of 453.321. It does cite to three, albeit very brief, Nevada Supreme Court cases from the 70s. One of those cases, Ward does note that there was insufficient evidence in that case to sustain the conviction for sale of controlled substance. That is relevant in this court's consideration because there were other options under the Nevada revised statute of 453.321 available for the court's consideration. If it wanted to consider them to be alternative, we'll say, if the court wanted to evaluate. The government thinks that that case is appropriate because it sets forth elements. In that case, there was insufficient evidence to support how the government had charged that case, mainly that there was a sale of controlled substances. In the Ward case, what happened was that it involved an undercover and that the defendant was arrested prior to the actual exchange of drugs for money in that case. Prior to that arrest, though, there had been transaction discussions about how much money would be paid in exchange for drugs. Yeah, boy, it sure has nothing to do with divisibility. I don't think the Ward had been invented when those cases were decided. Which leads, I guess, to concern about divisibility overall and its difficulty in determining elements versus means, which was somewhat cited by the Nevada Supreme Court in considering its prior cases in Figueroa Alvarez. We don't get to deal with that. We just have to apply what we've got now, for which I'm very sympathetic to the district judge, by the way. I do want to note that even if we set aside the divisibility issue, there is also no cause to excuse procedural default in this case. Help us with that. This was a Pro Se 2255, and construing the petition liberally, the government briefed whether or not there was an ineffective assistance of counsel claim in its response brief at the district court level. In the reply brief, and this is at ER 22, the defendant noted in his reply brief that the government had urged the court to reject an ineffective assistance of counsel claim that Casildo never actually presented. So, in an interesting way, the ineffective assistance of counsel claim was presented in abundance of caution by the government to the district court, and the defendant himself in his reply brief made it clear that he was not raising an ineffective assistance of counsel claim. And so, the ineffective assistance... ...might be ineffective assistance of counsel. Well, didn't he raise this issue to his appellate counsel several times, and the appellate counsel declined to raise it to the court for whatever reasons? And isn't that just... If we find that the district court erred with respect to divisibility, and so that the guidelines calculation is going to be incorrect, isn't that just ineffective assistance, and can't we just send it right back down to the district judge, and the district judge might agree with you and say, no, I would have done this regardless, but he might take a look and decide that it ought to be something different. The way that the 2255 motions work, defendants are not entitled to counsel. And so, when you look at how that process plays out, it is oftentimes a pro se defendant who is briefing the matter, which is why this court has indicated that those briefs are to be construed liberally. And in doing that, the issue of ineffective assistance of counsel was put squarely before the defendant in this case, and he indicated that he had not raised that issue with the district court. And so, that issue, habeas is an extraordinary remedy, and understanding that, but given essentially an invitation from the government to raise an ineffective assistance of counsel, the defendant declined. You know, I understand fully what you're saying here. Sometimes, it might be just easier, send it back to the district judge, if Judge Windmill, who's a very good judge, says, you know, I met it the first time, I met it again, same sentence, game's over. I'd prefer to just let Judge Windmill have another look. You don't need an expert. Respectfully disagree, Your Honor. Of course. The district court in this case, as you noted, and as has been noted here, is the district court throughout this case. And I want to say, he's a very good judge. I think so as well. And certainly in this case, and providing the defendant with the opportunity to claim ineffective assistance of counsel when he specifically stated that that is not what he is claiming, goes above and beyond the 2255 motion in this case. In addition, even if this court finds that that statute, as the Actus Reis, is not divisible, the government still doesn't believe that prejudice has been shown. The district court opinion makes pretty clear in this case that the defendant would not have received a different sentence. The district court considered the defendant's criminal history and the 3553A factors appropriately in this case. That's what went up on direct appeal and was upheld. And so the sentence of 235 months would not be prejudicial in this case. And so we ask you to affirm. Thank you. Thank you, counsel. Mr. Silvey? The district court also found that a qualifying predicate, which we're all believing that that's incorrect. So it should go back to Judge Windmill, who I have great respect for. But quickly, the District of Idaho does not appoint counsel in habeas unless there's an evidentiary hearing, or it's very rare. And we have a pro se petitioner here who thinks that he is actually innocent of the sentence, which, you know, he learned that from some jailhouse lawyer. I mean, he doesn't understand the nuances of this. So, again, we'd at least like it's not reversed outright. But by my math, if Judge Windmill did the same thing in this case, if it started at the 34 in a Category 5 and went down three levels, the trial penalty, he'd be at 168 to 210, which is a lot less than the 235. So I think that's the prejudice. And finally, in Ward, the correct charge was attempt, which is the sub C, not the sub A. That's why it doesn't show that it is divisible. And I'm done. Okay. Thank you to both counsel. This matter is now submitted.
judges: FLETCHER, ALBA, Orrick